UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELINDA CHEE,

        Plaintiff Pro Se,

vs.

        Case No. 08-CV-11416

        HON. GEORGE CARAM STEEH

WASHTENAW COUNTY, MICHIGAN,
STATE OF HAWAII, KIMBERLY TOWLER,
SUE LEHRKE, SARA HARVEY, CYD
IGNACIO,

        Defendants.

_____/

## ORDER GRANTING WASHTENAW COUNTY'S MOTION TO DISMISS AND GRANTING TOWLER'S MOTION TO DISMISS

This lawsuit arises out of a child custody dispute. Plaintiff Melinda Chee has sued Washtenaw County for the acts of Washtenaw County Circuit Court Judge Timothy Connors. She has also sued the State of Hawaii; Kimberly Towler, who acted as a guardian ad litem in the child custody case that originated in Hawaii; Sara Harvey, her ex-husband's attorney in the child custody dispute; Sue Lehrke, child psychologist who treated Chee's minor children; and, Cyd Ignacio, her ex-husband's secretary. Defendants Washtenaw County and Kimberly Towler have filed separate motions to dismiss. This Court shall decide the motions on the papers submitted without oral argument pursuant to Fed. R. Civ. P. 7.1(e)(2). For the reasons stated below, the motions of Washtenaw County and Towler shall be granted.

BACKGROUND

Because this Court is deciding a motion to dismiss, this Court is to construe the allegations of the Complaint as true to determine if the plaintiff may have a viable cause of action. Accordingly, the Court's statement of the facts here, derives from plaintiff's Complaint and are her allegations only.

Plaintiff Melinda Chee (Chee) is a nurse practitioner and a graduate of the University of Michigan. She was married to Kevin Chee, a Honolulu attorney, and the two divorced on March 4, 1996. Plaintiff moved to the mainland with the four children in 1995 and they remained in her custody until 1999. The children are Erica Chee (age 23), Kyle Chee (age 21), Bryan Chee (age 19) and Haley Elizabeth Chee (H.C.) (age 16). In 1999, at the end of his summer visitation with the children, Kevin Chee moved for sole custody of the children. Plaintiff filed her own motion for sole custody of the children which was denied. On September 24, 1999, the parties entered into a stipulated order for the children to remain primarily in Hawaii and providing visitation with plaintiff to take place in Hawaii. Towler was the court appointed guardian ad litem in that custody case.

On October 8, 2000, at the end of H.C.'s visitation with plaintiff in Michigan, she did not want to return to Hawaii and the airline refused to board her because of her crying. When plaintiff told her ex-husband of H.C.'s actions, he filed a motion requiring her to return H.C. to Hawaii which was granted. Kevin Chee traveled to Michigan but H.C. refused to accompany him. On November 1, 2000, he filed an <u>ex parte</u> motion for temporary custody of H.C. which was granted by the Hawaiian Court. Plaintiff contends that the entry of the <u>ex parte</u> order violated her due process rights.

2

On November 2, 2000, Washtenaw County Judge Timothy P. Connors enforced that order changing of H.C., a minor child, to sole legal and physical custody of Kevin Chee. Plaintiff argues that the decision was rendered ex parte and that she was deprived of her due process rights. On November 3, 2000, H.C. was taken by defendants Kimberly Towler, H.C.'s custodial guardian ad litem; and Cyd Ignacio, Kevin Chee's secretary; from her Ann Arbor elementary school and was driven to San Francisco and eventually, returned to Hawaii. Plaintiff claims that her daughter was forcefully removed from her elementary school classroom and dragged to the car. She further alleges that Towler sent a letter to plaintiff's attorney barring plaintiff from praying with her daughter.

On November 6, 2000, after H.C. was back in Hawaii, Kevin Chee filed for a protective order against plaintiff which prohibited her from communicating with him, the children, school and medical personnel, caretakers and child care facilities, among others. A TRO was entered preventing plaintiff from having contact with her minor children. The custody dispute lingered in the Hawaiian Court for years with many adjournments and continuances during which time H.C. remained in the custody of her father. From November 6, 2000 until March 30, 2007, when the TRO was lifted, plaintiff was barred from any legitimate contact with her children. The only exceptions to this rule occurred when plaintiff's oldest child visited her in Michigan or when Towler proposed that plaintiff visit the children for one to two hours in a visitation center which plaintiff contends was for those with substance abuse problems. On July 10, 2007, a trial was held and the Judge verbally entered a visitation schedule which allowed plaintiff to see her daughter H.C. A written order entered on October 12, 2007 which

3

allowed plaintiff to have visitation with her daughter.

In the spring of 2006, H.C. was expelled from an elite Honolulu private school because of her drug use. She transferred to a public school where she is failing and is barred from participating in school sports because of her poor grades. Plaintiff maintains that she was unable to help her daughter by developing an action plan with the pediatrician or school counselors because H.C.'s father has temporary sole legal custody.

In this lawsuit, plaintiff argues that the ex parte custody orders and TRO entered by the Hawaiian Court violated her due process rights. She alleges that Towler and Kevin Chee's attorney, Sara Harvey, violated her due process rights by applying for ex parte custody orders. She further alleges that Towler's conduct excluded her from her children's lives for years. Plaintiff alleges that Towler had a prejudicial bias against her because Towler was involved in a romantic relationship with Cyd Ignacio, her ex-husband's secretary. Plaintiff alleges that Towler falsified her reports to the Hawaii Family Court.

Lehrke was H.C.'s individual therapist who allegedly drafted a letter to the Hawaiian Court alleging that H.C. was better off with her father and suffered from parental alienation syndrome. Plaintiff complains that Lehrke engaged in "junk science." Plaintiff claims that she lost custody of her children, based in part, on Lehrke's diagnosis that she was a "parental alienator" although Lehrke never so much as met her. Cyd Ignacio was Kevin Chee's secretary who traveled to Michigan to help bring H.C. back to Hawaii with Towler. Plaintiff alleges that Ignacio kidnapped her daughter.

On March 13, 2008, according to defendant Washtenaw County, plaintiff filed a

petition in Washtenaw County Circuit Court which challenged the enforcement action in the 2000 case and asserted individual liability against four of the same defendants here: Kimberly Towler, Sue Lehrke, Sara Harvey, and Cyd Ignacio. The Circuit Court dismissed the petition finding no basis to reopen the 2000 case, the court lacked jurisdiction, the plaintiff failed to appeal the custody order, and plaintiff failed to state any cognizable claims.

Plaintiff's claim against Washtenaw County here stems from the judicial acts of Judge Connors who is not a named defendant in this action. Plaintiff claims that Judge Connors, in his order of November 2, 2000, enforced the ex parte orders of the Hawaiian Court which changed custody to the children's father. She alleges that the County is liable because Judge Connors allowed Towler and Ignacio to take H.C. from her in alleged violation of her Fourth and Fourteenth Amendment rights. Plaintiff alleges that the Hawaiian court is prejudiced against Caucasian women. She also claims that Kevin Chee sought to retaliate against her for her testimony before the Hawaii Senate on Family Court procedures.

Plaintiff seeks $4.9 million in damages and injunctive relief. She seeks a permanent injunction prohibiting Washtenaw County and Hawaii from unreasonable seizure of her children.

## STANDARD OF LAW

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim on an issue of law. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46

(1957). "In order for a dismissal to be proper, it must appear beyond doubt that the plaintiff would not be able to recover under any set of facts that could be presented consistent with the allegations of the complaint." Bower v. Federal Exp. Corp., 96 F.3d 200, 203 (6th Cir. 1996). In considering a Rule 12(b)(6) motion, a court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." G.M. Eng'r and Assoc., Inc. v. West Bloomfield Tp., 922 F.2d 328, 330 (6th Cir. 1990).

## ANALYSIS

A pro se civil rights complaint is to be construed liberally. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). But even a pro se complaint must plead facts sufficient to show that a legal wrong has been committed for which plaintiff is entitled to relief. Although Chee has not identified the legal basis for her cause of action, the Court agrees with Towler and Washtenaw County that plaintiff is seeking redress of alleged Constitutional deprivations under 42 U.S.C. § 1983. Section 1983 provides a civil cause of action against any person, who under color of state law, deprives a citizen of "any rights, privileges, or immunities secured by the Constitution and laws."

Now before the Court are motions to dismiss filed by defendant Towler and Washtenaw County. Towler argues that she is entitled to dismissal based on quasi-judicial immunity. Washtenaw County argues that it is entitled to dismissal as it cannot be liable for the acts of Judge Connors who is not a Washtenaw County employee. Both Towler and Washtenaw County also argue that the statute of limitations has run, and this Court is prohibited from reviewing a state court judgment under the Rooker-Feldman doctrine.

6

1. Quasi-judicial immunity

Chee charges Towler with violating her constitutional rights when she traveled to Michigan in November, 2000, to return H.C. to Hawaii pursuant to an order of the Hawaiian state-court. Plaintiff also complains that Towler abused her authority as a court officer by violating state court procedural rules during the litigation of the Hawaiian custody dispute. The Sixth Circuit has held that guardian ad litems are protected by absolute immunity. Kurzawa v. Mueller, 732 F.2d 1456, 1458 (6th Cir. 1984). In that case, the Sixth Circuit explained:

> [a] guardian ad litem must also be able to function without the worry of possible later harassment and intimidation from dissatisfied parents. Consequently, a grant of absolute immunity would be appropriate. A failure to grant immunity would hamper the duties of a guardian ad litem in his role as advocate for the child in judicial proceedings.

Id. Because plaintiff accuses Towler of misconduct in her role as a guardian ad litem, Towler is entitled to absolute immunity from suit and must be dismissed from this lawsuit.

2. Respondeat Superior Liability

In her Complaint, the only allegations of fact against Washtenaw County stem from her allegations that Judge Connors, of Washtenaw County Circuit Court, enforced the custody order of the Hawaii Court without a hearing, and allowed H.C. to be taken back to Hawaii by Towler and Ignacio, in alleged violation of her Fourth and Fourteenth Amendment rights. In order to prove a civil rights claim under § 1983, plaintiff must prove that (1) she was deprived of a right secured by the Constitution or laws of the United States, and (2) she was subjected to or caused to be subjected to this deprivation by a person acting under color of state law. Flagg Bros. v. Brooks, 436 U.S.

7

149, 155 (1978); Brock v. McWherter, 94 F.3d 242, 244 (6th Cir. 1996). Plaintiff has failed to so much as allege that the County violated her Constitutional rights. The only connection the County has to the lawsuit is plaintiff's allegation that Judge Connors acted unlawfully. Judge Connors is not an employee of the County, but of the State of Michigan. In any event, there is no respondeat superior liability under § 1983. Taylor v. Michigan Dep't of Corr., 69 F.3d 716, 727-28 (6th Cir. 1995); Pembaur. City of Cincinnati, 475 U.S. 469, 478 (1986); Monell v. Department of Social Svs., 436 U.S. 658, 691-92 (1978). In order for the County to be held liable under § 1983, it must be shown that the County had a "custom" or "policy" that caused the Constitutional deprivation. Monell, 436 U.S. at 694. No such allegation has been made here. Accordingly, the County is entitled to dismissal.

3.   Statute of Limitations

Towler and Washtenaw County both are also entitled to dismissal because the statute of limitations for a 42 U.S.C. § 1983 civil rights action has run. The statute of limitations period for a § 1983 lawsuit is defined by the state statute of limitations period for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 276-80 (1985). Under Michigan law, MCL § 600.5805(10), the statute of limitations period for a § 1983 claim is three-years. Carroll v. Wilkerson, 782 F.2d 44, 45 (6th Cir.), cert. denied, 479 U.S. 923 (1986). Given plaintiff's allegations, her cause of action against the County arose on November 2, 2000 when Judge Connors entered the order enforcing the order of the Hawaii state court. Similarly, her claim against Towler accrued in November, 2000 when Towler assisted in returning H.C. to her father's custody. Because nearly eight years have passed since Judge Connors entered his order and H.C. was taken back to

8

her father, plaintiff's claims against the County and Towler are time barred.

Chee argues that the statute of limitations does not apply because the custody dispute is ongoing. But plaintiff's claims here against the County and Towler arise from the ancillary enforcement action in Wayne County Circuit Court which took place over seven years ago. Accordingly, her claims against Towler and the County are time-barred.

4.  Rooker-Feldman Abstention

Finally, the Court considers the arguments of Towler and the County that dismissal is warranted under the Rooker/Feldman abstention doctrine. That doctrine originated in the Supreme Court's seminal decisions of the same name. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). Under the Rooker-Feldman doctrine, federal district courts may not review state court judgments. Only the Supreme Court can sit as an appellate court over a state court decision pursuant to 28 U.S.C. § 1257. In Tropf v. Fidelity Nat'l Title Ins. Co., 289 F.3d 929 (6th Cir. 2002), the Court of Appeals held that the Rooker-Feldman doctrine required dismissal of plaintiffs' lawsuit where the lawsuit amounted only to challenges of various state-court judgments. Id. at 938. In that case, plaintiffs cited a number of fraud and RICO claims, all of which, relied on the assumption that the warranty deed and land contract in dispute were fraudulent. Id. at 937-38. The warranty deed and land contract, however, were upheld in every state court judgment involving the plaintiffs. Id. at 938. Thus, the Sixth Circuit found that the federal lawsuit was "inextricably intertwined" with review of the state court proceeding which deprived the district court of subject matter jurisdiction.

9

Recently, the Supreme Court clarified and narrowed the doctrine's scope in Exxon Mobil Corp. v. Saudi Basic Indus., Corp., 544 U.S. 280 (2005). The Exxon Court explained that the Rooker-Feldman doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. The doctrine does not bar a district court from exercising subject matter jurisdiction because a party brings a claim in federal court that involves a matter previously litigated in state court. Id. at 292. The Supreme Court explained that if "a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction" because Rooker-Feldman does not apply. Id. at 293 (citations omitted).

In Exxon, two subsidiaries of Exxon and the defendant SABIC formed a joint venture to produce polyethylene in Saudia Arabia. Id. at 289. After twenty years of doing business together, the parties disputed royalty payments. Id. SABIC sued Exxon in state court seeking a declaratory judgment that the royalty payments were proper. Id. Exxon, on the other hand, filed suit in federal court alleging that SABIC had overcharged the joint ventures for the sublicenses. Id. The two cases proceeded at the same time, but the state case went to trial before the federal case. Id. at 290. In the federal case, the district court denied SABIC's motion to dismiss but certified its decision for interlocutory appeal. Id. On appeal, the Third Circuit sua sponte raised the issue of whether the Rooker-Feldman doctrine barred the federal lawsuit since the state case had proceeded to a verdict first. Id. The Third Circuit ruled that the Rooker-

Feldman doctrine required dismissal of the federal case once the state court entered judgment on the verdict. Id. The Supreme Court reversed the Court of Appeals and explained that "[w]hen there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state court." Id. at 292. The Supreme Court noted that Exxon did not come to federal court to undo the state court judgment but to pursue claims in the event that it lost in state court on grounds, such as the state statute of limitations, that might not preclude relief in the federal court. Id. at 293-94.

Since Exxon was decided, the Sixth Circuit fleshed out the doctrine in greater detail in McCormick v. Braverman, 451 F.3d 382, 389 (6th Cir. 2006), cert. denied, ___ U.S. ___, 128 S. Ct. 41 (2007) where the Court of Appeals sought to distinguish between situations where plaintiffs merely attack state court judgments and cases where plaintiffs assert independent claims. In McCormick, the Sixth Circuit ruled that the inquiry focuses on the source of the injury. Id. at 393. If the source of the injury is merely the state court judgment, then Rooker-Feldman applies and bars the court from exercising subject matter jurisdiction. Id. If, on the other hand, the source of the injury comes from some other source, such as a third party's actions, then the plaintiff asserts an independent claim. Id. In explaining the source of injury test, the Sixth Circuit by way of example, considered the hypothetical case of a father who loses custody of his son in a state court judgment and then sues in federal court for the return of his son on the grounds that the state decision violates his due-process rights as a parent. Id. at 394. Under those circumstances, the Sixth Circuit noted that the father's federal lawsuit would be barred under the Rooker-Feldman doctrine as what really is at stake is an attack of the state court judgment. Id. This Court cannot imagine a closer analogy to

11

the case pending here.

In the instant dispute, plaintiff's claims against Towler and the County are barred by the Rooker-Feldman doctrine. Plaintiff's claim that the County somehow violated her Fourth and Fourteenth Amendment rights is tied directly to the custody order Judge Connors entered enforcing the decision of the Hawaiian state court. Boiled down to its bare essentials, plaintiff's claim against the County simply seeks to appeal Judge Connors November 2, 2000 order which ruled that plaintiff's daughter, H.C., be returned to the sole custody of her father. Because plaintiff's claim against the County seeks to challenge the judgment of the Washtenaw County Circuit Court, her claim is barred by the Rooker-Feldman doctrine.

Similarly, plaintiff's claims against Towler require an analysis of whether the Hawaii state court erred in making and enforcing its custody orders and whether Washtenaw County Circuit Court erred in enforcing the Hawaii state court order. Under these circumstances, plaintiff's claims against Towler are also barred by the Rooker-Feldman doctrine.

Plaintiff argues that the Rooker-Feldman doctrine does not apply because there remains parallel litigation pending in the Hawaii state courts. Plaintiff has wrongly interpreted the Rooker-Feldman doctrine. First of all, as a matter of fact, plaintiff's allegations against Towler and the County stem from the enforcement action in Wayne County Circuit Court. Secondly, to the extent that her claims here could be said to derive from the Hawaii lawsuit, her allegations are that the Hawaii state court erred in its custody decisions. Such an attack on state court judgments falls within the rubric of the Rooker-Feldman doctrine and thus, her claims against Towler and the County must be

dismissed.

Accordingly,

IT IS ORDERED that Towler's motion to dismiss (docket entry #13) hereby is GRANTED and Towler is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Washtenaw County's motion to dismiss (docket entry # 4) hereby is GRANTED and the County is DISMISSED WITH PREJUDICE.

Dated: June 12, 2008

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 12, 2008, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---