MELINDA CHEE,

       Plaintiff,

                            Case No. 08 -CV -11416
vs.                             HON. GEORGE CARAM STEEH


STATE OF HAWAII, SUE LEHRKE, SARA HARVEY,
CYD IGNACIO,

       Defendants.

_____/


## ORDER GRANTING DEFENDANTS DR. LEHRKE, HARVEY AND IGNACIO'S MOTIONS TO DISMISS AND DISMISSING THE STATE OF HAWAII

This lawsuit arises out of a child custody dispute.  Plaintiff Melinda Chee has

sued Dr. Sue Lehrke, child psychologist who treated Chee's minor children; Sara

Harvey, her ex-husband's attorney in the child custody dispute; Cyd Ignacio, her ex-

husband's secretary; and the State of Hawaii.  Defendants Washtenaw County and

guardian ad litem Kimberly Towler have been dismissed by an earlier order of this

Court.  Defendants Sara Harvey and Cyd Ignacio filed motions to dismiss together while

Sue Lehrke has filed a separate motion to dismiss.  The State of Hawaii, via the

Department of the Attorney General, has written a letter to this Court asking for sua

sponte dismissal of plaintiff's claims against it, since none of its attorneys are licensed

to appear before the United States District Court for the Eastern District of Michigan.

This Court ordered Chee to show cause why the State of Hawaii should not be

dismissed and she has filed a response. This Court shall decide the motions on the papers submitted without oral argument pursuant to Federal Rules of Civil Procedure 7.1(e)(2). For the reasons stated below, the motions of Lehrke, Harvey, and Ignacio shall be granted and the State of Hawaii shall be sua sponte dismissed.

BACKGROUND

Because this Court is deciding motions to dismiss, this Court is to construe the allegations of the Complaint as true to determine if the plaintiff may have a viable cause of action. Accordingly, the Court's statement of the facts here derives from plaintiff's Complaint.

Plaintiff Melinda Chee (Chee) is a nurse practitioner and a graduate of the University of Michigan. She was married to Kevin Chee, a Honolulu attorney, and the two divorced on March 4, 1996. Plaintiff moved to the mainland with their four children in 1995 and they remained in her custody until 1999. The children are Erica Chee (age 23), Kyle Chee (age 21), Bryan Chee (age 19), and Haley Elizabeth Chee (H.C.) (age 15). In 1999, at the end of his summer visitation with the children, Kevin Chee moved for sole custody of the children. Plaintiff filed her own motion for sole custody of the children which was denied. On September 24, 1999, the parties entered into a stipulated order for the children to remain primarily in Hawaii and providing visitation with plaintiff to take place in Hawaii. Towler, already dismissed, was the court appointed guardian ad litem in that custody case.

On October 8, 2000, at the end of H.C.'s visitation with plaintiff in Michigan, she did not want to return to Hawaii and the airline refused to board her because of her crying. When plaintiff told her ex-husband of H.C.'s actions, he filed a motion requiring

her to return H.C. to Hawaii which was granted.  Kevin Chee traveled to Michigan, but H.C. refused to accompany him.  On November 1, 2000, he filed an ex parte motion for temporary custody of H.C. which was granted by the Hawaiian Court.  Plaintiff contends that the entry of the ex parte order violated her due process rights.

On November 2, 2000, Washtenaw County Judge Timothy P. Connors enforced that order changing H.C., a minor child, to sole legal and physical custody of Kevin Chee.  Plaintiff argues that the decision was rendered ex parte and that she was deprived of her due process rights.  On November 3, 2000, H.C. was taken by Towler, H.C's custodial guardian ad litem and Cyd Ignacio, Kevin Chee's secretary, from her Ann Arbor elementary school and was driven to San Francisco and eventually, returned to Hawaii.  Plaintiff claims that her daughter was forcefully removed from her elementary school classroom and dragged to the car.

On November 6, 2000, after H.C. was back in Hawaii, Kevin Chee filed for a protective order against plaintiff which prohibited her from communicating with him, the children, school and medical personnel, caretakers and child care facilities, among others.  A temporary restraining order was entered preventing plaintiff from having contact with her minor children.  The custody dispute lingered in the Hawaiian Court for years with many adjournments and continuances during which time H.C. remained in the custody of her father.  From November 6, 2000 until March 30, 2007, when the temporary restraining order was lifted, plaintiff was barred from any legitimate contact

3

with her children.  The only exceptions to this rule occurred when plaintiff's oldest child visited her in Michigan or when Towler proposed that plaintiff visit the children for one to two hours in a visitation center which plaintiff contends was for those with substance abuse problems.  On July 10, 2007, a trial was held and the Judge verbally ordered a visitation schedule which allowed plaintiff to see her daughter H.C.  A written order was entered on October 12, 2007 which allowed plaintiff to have visitation with her daughter.

In the spring of 2006, H.C. was expelled from an elite Honolulu private school because of her drug use.  She transferred to a public school where she is failing and is barred from participating in school sports because of her poor grades.  Plaintiff maintains that she was unable to help her daughter by developing an action plan with the pediatrician or school counselors because H.C.'s father has temporary sole legal custody.

In this lawsuit, plaintiff argues that the ex parte custody orders and temporary restraining order entered by the Hawaiian Court violated her due process rights.  She alleges that Harvey, Kevin Chee's attorney, violated her due process rights by applying for ex parte custody orders.  She further alleges that Harvey misrepresented events and made false statements to the Hawaii and Washtenaw courts.

Dr. Lehrke was H.C.'s individual therapist who allegedly drafted a letter to the Hawaiian Court alleging that H.C. was better off with her father and suffered from "parental alienation syndrome."  Plaintiff complains that Dr. Lehrke engaged in "junk science."  Plaintiff claims that she lost custody of her children, based in part, on Dr. Lehrke's diagnosis that she was a "parental alienator" although Dr. Lehrke never so much as met her.  Plaintiff alleges that Dr. Lehrke too misrepresented events and made

4

false statements to the Hawaii courts.

Cyd Ignacio was Kevin Chee's secretary who traveled to Michigan to help bring H.C. back to Hawaii with Towler. Plaintiff alleges that Ignacio kidnaped her daughter and that H.C.'s life was endangered by Ignacio's actions and presence. Plaintiff complains that Ignacio helped Towler kidnap H.C. who was significantly traumatized by the event. Plaintiff further alleges that the Hawaii Family Court was prejudiced against her because she testified before the Hawaii Legislature in favor of court reform, and based on the fact that she is Caucasian.

On March 13, 2008, according to defendant Washtenaw County, plaintiff filed a petition in Washtenaw County Circuit Court which challenged the enforcement action in the 2000 case and asserted individual liability against four of the same defendants here: Kimberly Towler, Dr. Lehrke, Sara Harvey, and Cyd Ignacio. The Circuit Court dismissed the petition finding no basis to reopen the 2000 case, the court lacked jurisdiction, the plaintiff failed to appeal the custody order, and plaintiff failed to state any cognizable claims.

Plaintiff seeks $4.9 million in damages against Dr. Lehrke, Harvey, Ignacio and the State of Hawaii. She also seeks "criminal penalties" against defendants Dr. Lehrke, Harvey, and Ignacio for allegedly removing a child interstate as a result of unconstitutional court processes and resulting in child endangerment and the alleged wrongful admission of her daughter H.C. in a psychiatric facility. Additionally, she seeks a permanent injunction prohibiting Dr. Lehrke, Harvey, Ignacio, and the State of Hawaii, from playing any role against any parent or guardian of a child without evidence of abuse, neglect, or abandonment. Plaintiff also seeks a permanent injunction

prohibiting the State of Hawaii from the unreasonable seizure of children and from denying Family Court participants their due process rights.

STANDARD FOR DISMISSAL

Defendants have moved for dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Defendants have made a facial attack on the subject matter jurisdiction, so in reviewing such an attack, this Court takes the allegations in the complaint as true. RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134-35 (6th Cir. 1996); Ohio Nat'l Life Ins. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).

Defendants have also moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. Under the Supreme Court's recent articulation of the Rule 12(b)(6) standard in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Bell Atlantic, 127 S. Ct. at 1964-65) (citations and quotations omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Id. (citing Bell

6

Atlantic, 127 S. Ct. at 1965).

ANALYSIS

A pro se civil rights complaint is to be construed liberally. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). But even a pro se complaint must plead facts sufficient to show that a legal wrong has been committed for which plaintiff is entitled to relief. Although Chee has not identified the legal basis for her cause of action, the Court finds that plaintiff is seeking redress of alleged Constitutional deprivations under 42 U.S.C. § 1983. Section 1983 provides a civil cause of action against any person, who under color of state law, deprives a citizen of "any rights, privileges, or immunities secured by the Constitution and law." 42 U.S.C. § 1983.

Now before the Court are motions to dismiss filed by defendants Dr. Lehrke, Harvey, and Ignacio. Dr. Lehrke argues, among other things, that she is entitled to dismissal because the Court lacks subject matter jurisdiction, she was not acting under color of state law, the claims are barred by the statute of limitations, she is entitled to witness immunity, and the Court lacks personal jurisdiction over her. Harvey and Ignacio argue that they are entitled to dismissal because plaintiff has used an unanswerable form of pleading, made no allegation of legal counts, and has pleaded immaterial and scandalous matters. This Court shall not dismiss Harvey and Ignacio on the grounds that the Complaint is not well pled as this Court construes the pro se complaint liberally. Harvey and Ignacio also argue that this Court lacks subject-matter jurisdiction over this action. In its letter to the Court, the State of Hawaii argues that it is entitled to sua sponte dismissal on the basis of Eleventh Amendment immunity, sovereign immunity, absolute judicial immunity, and the Rooker-Feldman doctrine.

7

I.      Subject Matter Jurisdiction

Federal courts lack jurisdiction over child custody disputes.  Ankenbrandt v.

Richards, 504 U.S. 689, 703 (6th Cir. 1992) (discussing domestic relations exception in

diversity context).  In determining whether this Court has jurisdiction, the Court must

carefully examine the complaint "to determine whether it is actually concerned with a

custody issue - i.e., whether it actually seeks a child custody decree."  Holloway v.

Brush, 220 F.3d 767, 790 (6th Cir. 2000) (citation omitted).  In this lawsuit, three of

Chee's children are past the age of majority so she can no longer seek custody of those

children.  From the face of the complaint, it is unclear if she is seeking custody of her

sixteen-year old daughter H.C. who is currently in the custody of her father.  But there is

no doubt she is challenging the underlying custody decisions.  The gravaman of the

complaint is Chee's allegation that custody was changed without due process.

According to the complaint, she is seeking $4.9 million dollars in damages allegedly

inflicted upon her "as a result of being denied access to her children for many years."

(Complaint at 42).  She also seeks to enjoin defendants from "including allegations in a

juvenile dependency petition against any parent or guardian of a child without

reasonable and articulable evidence giving rise to a reasonable suspicion that the child

has been abused, neglected or abandoned by the accused parent or guardian, or is in

imminent danger of abuse, neglect or abandonment by that parent."  (Complaint at 42-

43).  The relief Chee seeks requires an analysis of the underlying custody dispute to

determine if Chee was wrongfully denied access to her children.  Such a review of the

state court custody proceedings is impermissible in federal court.  Firestone v. The

Cleveland Trust Co., 654 F.2d 1212, 1215 (6th Cir. 1981) (even when brought under the

guise of federal question jurisdiction, a suit whose substance is domestic relations generally will not be entertained in federal court).

This Court also lacks subject matter jurisdiction under the Rooker-Feldman doctrine. That doctrine originated in the Supreme Court's seminal decisions of the same name. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). Under the Rooker-Feldman doctrine, federal district courts may not review state court judgments. Only the Supreme Court can sit as an appellate court over a state court decision pursuant to 28 U.S.C. § 1257. In Tropf v. Fidelity Nat'l Title Ins. Co., 289 F.3d 929, 936 (6th Cir. 2002), cert. denied, 537 U.S. 1118 (2003), the Court of Appeals held that the Rooker-Feldman doctrine required dismissal of plaintiffs' lawsuit where the lawsuit amounted only to challenges of various state court judgments. Id. at 938. Thus, the Sixth Circuit found that the federal lawsuit was "inextricably intertwined" with review of the state court proceeding which deprived the district court of subject matter jurisdiction.

Recently, the Supreme Court clarified and narrowed the doctrine's scope in Exxon Mobil Corp. v. Saudi Basic Indus., Corp., 544 U.S. 280 (2005). The Exxon Court explained that the Rooker-Feldman doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. The doctrine does not bar a district court from exercising subject matter jurisdiction because a party brings a claim in federal court that involves a matter previously litigated in state court. Id. at 292. The Supreme Court explained that if "a

federal plaintiff presents some independent claim, albeit one that denies a legal

conclusion that a state court has reached in a case to which he was a party, then there

is jurisdiction" because <u>Rooker-Feldman</u> does not apply.  <u>Id.</u> at 293 (citations omitted).

  In <u>Exxon</u>, two subsidiaries of Exxon and the defendant SABIC formed a joint

venture to produce polyethylene in Saudia Arabia.  <u>Id.</u> At 289.  After twenty years of

doing business together, the parties disputed royalty payments.  <u>Id.</u>  SABIC sued Exxon

in state court seeking a declaratory judgment that the royalty payments were proper.  <u>Id.</u>

Exxon, on the other hand, filed suit in federal court alleging that SABIC had

overcharged the joint ventures for the sublicenses.  <u>Id.</u>  The two cases proceeded at the

same time, but the state case went to trial before the federal case.  <u>Id.</u> at 290.  In the

federal case, the district court denied SABIC's motion to dismiss, but certified its

decision for interlocutory appeal.  <u>Id.</u>  On appeal, the Third Circuit <u>sua</u> <u>sponte</u> raised the

issue of whether the <u>Rooker-Feldman</u> doctrine barred the federal lawsuit since the state

case had proceeded to a verdict first.  <u>Id.</u>  The Third Circuit ruled that the <u>Rooker-</u>

<u>Feldman</u> doctrine required dismissal of the federal case once the state court entered

judgment on the verdict.  <u>Id.</u>  The Supreme Court reversed the Court of Appeals and

explained that "[w]hen there is parallel state and federal litigation, <u>Rooker-Feldman</u> is

not triggered simply by the entry of judgment in state court."  <u>Id.</u> at 293-94.

  Since <u>Exxon</u> was decided, the Sixth Circuit fleshed out the doctrine in greater

detail in <u>McCormick v. Braverman,</u> 451 F.3d 382, 389 (6th Cir. 2006), <u>cert. denied</u>, ___

U.S. ___, 128 S. Ct. 41 (2007) where the Court of Appeals sought to distinguish

between situations where plaintiffs merely attack state court judgments and cases

where plaintiffs assert independent claims.  In <u>McCormick</u>, the Sixth Circuit ruled that

the inquiry focuses on the source of the injury.  Id. at 393.  If the source of the injury is merely the state court judgment, then Rooker-Feldman applies and bars the court from exercising subject matter jurisdiction.  Id.  If, on the other hand, the source of the injury comes from some other source, such as a third party's actions, then the plaintiff asserts an independent claim.  Id.  In explaining the source of the injury test, the Sixth Circuit by way of example, considered the hypothetical case of a father who loses custody of his son in a state court judgment and then sues in federal court for the return of his son on the grounds that state decision violates his due-process rights as a parent.  Id. at 394.  Under those circumstances, the Sixth Circuit noted that the father's federal lawsuit would be barred under the Rooker-Feldman doctrine as what really is at stake is an attack of the state court judgment.  Id.  This Court cannot imagine a closer analogy to the case pending here.

In the instant dispute, plaintiff's claims against Dr. Lehrke, Harvey, Ignacio, and the State of Hawaii are barred by the Rooker-Feldman doctrine.  Plaintiff's claim that Dr. Lehrke and Harvey misrepresented events and made false statements to the Hawaii state court require an analysis of whether the Hawaii state court erred in making and enforcing its custody orders.  Under these circumstances, plaintiff's claims against Dr. Lehrke and Harvey are barred by the Rooker-Feldman doctrine. Plaintiff's claim that Ignacio kidnaped her daughter H.C. is an attack on both the Hawaii state court judgment and the Washtenaw County court judgment.  Finally, this action appears to be an attempt by Chee to litigate in this Court the Hawaii Family Court decisions with which she disagrees.  Once again, the Rooker-Feldman doctrine bars her claims against the State of Hawaii.

II.     Liability under 42 U.S.C. § 1983

A 42 U.S.C. § 1983 claim must satisfy two elements: "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." Ellison v. Garbarino, 48 F.3d 192, 194 (6th Cir. 1995);  Simescu v. Emmet County Dep't. of Social Servs., 942 F.2d 372, 374 (6th Cir. 1991)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149 (1978)).  Even construing the complaint liberally to satisfy the first element, defendants are only liable under § 1983 for any deprivation of constitutional rights if they acted under color of state law.  Whether the remaining individual defendants are state actors depends upon whether their actions are "fairly attributable to the state." Ellison, 48 F.3d at 195.

The Sixth Circuit recognizes three tests for determining whether private conduct is fairly attributable to the state: "the public function test, the state compulsion test, and the symbiotic relationship or nexus test." Wolotsky v. Huhn, 960 F.2d 1331, 1335 (6th Cir. 1992) (citations omitted).  The public function test "requires that the private entity exercise powers which are traditionally exclusively reserved to the state …." Id.  Typical examples of this are running elections or eminent domain.  This is not the case here since Dr. Lehrke was acting in her function as a therapist, Harvey as an attorney, and Ignacio as plaintiff's ex-husband's secretary.

The second of the three tests, the state compulsion test, "requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." Id. Applying this test to the facts here would require a review of the state court judgments of the Hawaii court and the judgment enforced by Washtenaw County.  The facts

12

alleged do not support a finding of such coercive power as required by the state compulsion test.

Third, the nexus test requires a sufficiently close relationship through state regulation or contract between the state and the private actor so that the action taken may be attributed to the state.  Wolotsky, 960 F.2d at 1335.  As this is not the case here for any of the defendants, it is apparent Dr. Lehrke, Harvey, and Ignacio each acted in the capacity of a private citizen and so plaintiff's constitutional claims must fail.  Having failed to show that any of the remaining individual defendants were state actors, these three defendants must be dismissed.

III.    State of Hawaii

Chee has sued the State of Hawaii on the grounds that the Family Court allegedly prohibited prayer between Chee and her daughter, that it entered a temporary restraining order which barred her contact with her children, that it changed custody allegedly without a hearing, and that its custody orders were allegedly unconstitutional, and that hearings were delayed in alleged violation of the Constitution.  The State of Hawaii is entitled to dismissal on the basis of Eleventh Amendment immunity.  The law is well established that a State, including its agencies, arms and branches cannot be sued in federal court without its consent.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  The State of Hawaii has not waived its sovereign immunity from liability for damages for civil right violations.  See e.g. Makanui v. Dep't of Educ., 6 Haw. App. 397, 406 (1986), cert. denied, 68 Haw. 691 (1986).  Moreover, the Eleventh Amendment bars this court from exercising subject matter jurisdiction over state damage claims.  Quern v. Jordan, 440 U.S. 332, 338-41 (1979).

There is an exception to the Eleventh Amendment bar. A plaintiff may challenge the constitutionality of a state official's action by seeking prospective injunctive relief. Ex Parte Young, 209 U.S. 123, 155-56 (1908); Ernst v. Rising, 427 F.3d 351, 358-59 (6th Cir. 2005) (en banc) (citing Ex Parte Young). But a plaintiff may not seek retroactive monetary relief against the state official for past allegedly unconstitutional behavior. Edelman v. Jordan, 415 U.S. 651, 666-67 (1974). Thus, to the extent that Chee seeks $4.9 million in damages, that claim against the State of Hawaii must be dismissed under the Eleventh Amendment. To the extent that she seeks injunctive relief against the State of Hawaii that it be barred from the "unreasonable seizure" of her children, that claim for injunctive relief must also be dismissed on other grounds, namely the Rooker-Feldman doctrine.

Although Chee has not actually named the Family Court or the state judiciary as defendants in this case, it appears that she has sued the State of Hawaii for vicarious liability arising out of allegedly wrongful actions taken by the Family Court. The judiciary and judges are absolutely immune from civil liability for actions taken in their official capacity unless committed in the clear absence of jurisdiction. Nixon v. Fitzgerald, 457 U.S. 731, 746-47 (1982); Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982); Stump v. Sparkman, 435 U.S. 349, 356-57 (1978); Pierson v. Ray, 386 U.S. 547, 554 (1967). This absolute immunity accorded judges includes immunity from liability for money damages. Nixon, 457 U.S. at 744. Thus, to the extent that Chee seeks to recover against the State of Hawaii on the basis of vicarious liability arising out of the actions taken by the Family Court, her claims must fail as well.

IV.     Dr. Lehrke

In addition to the Court's conclusion above, that Dr. Lehrke was not a state actor, she is also entitled to dismissal on several other grounds, as discussed in her motion. She is entitled to dismissal because the statute of limitation for a 42 U.S.C. § 1983 civil rights action has run.  The statute of limitations period for a § 1983 lawsuit is defined by the state statute of limitations period for personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 276-80 (1985).  Under Michigan law, MCL § 600.5805 (10), the statute of limitations period for a § 1983 claim is three-years.  Carroll v. Wilkerson, 782 F.2d 44, 45 (6th Cir.), cert. denied, 479 U.S. 923 (1986).  Chee's allegations against Dr. Lehrke arise out of her treatment of Chee and the issuance of her report to the guardian ad litem on October 25, 2000.  Since nearly eight years have passed since Dr. Lehrke issued her report, Chee's § 1983 claims against her are time-barred.

 Chee alleges that Dr. Lehrke is liable for allegedly misrepresenting facts and making false statements to the Hawaii courts.  Dr. Lehrke also is entitled to immunity for her report to the guardian ad litem as § 1983 "does not allow recovery of damages against a private party for testimony in a judicial proceeding."  Briscoe v. LaHue, 460 U.S. 325, 329 (1983).  It is a common law rule that witnesses are immune from civil liability for testimony in a judicial proceeding.  Id. at 331-32.  Thus, Dr. Lehrke is entitled to witness immunity for her role in preparing the October 2000 report to the guardian ad litem.  Moreover, Chee cannot show that she has a constitutional right to an "unbiased" recommendation from a therapist in a custody dispute.

Finally, this Court lacks personal jurisdiction over Dr. Lehrke, who resides in

Hawaii with no contacts in Michigan.  MCL § 600.705.  In order for personal jurisdiction

to exist, defendant's conduct must fall within a provision of the Michigan long-arm

statute, and the exercise of jurisdiction must comport with due process.   Serras v. First

Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989); Green v. Wilson, 455

Mich. 342, 350-51 (1997).  Neither element is satisfied here.  Even if the long-arm

statute could be met, Chee cannot show that the exercise of jurisdiction over Dr. Lehrke

would comport with due process under the three-part test set forth by the Sixth Circuit.

Under that test, (1) the defendant must purposefully avail herself of the privilege of

acting in the forum state or causing a consequence in the forum state, (2) the cause of

action must arise from the defendant's activities in the forum state, and (3) the acts of

the defendant or consequences must have a substantial enough connection with the

forum state to make the exercise of jurisdiction over the defendant reasonable.  Dean v.

Motel 6 Operating L.P., 134 F.3d 1269, 1273 (6th Cir. 1998).  Plaintiff has not met these

three factors with respect to Dr. Lehrke.  Dr. Lehrke not only resides in Hawaii, but she

practices in Hawaii and renders treatment to patients in Hawaii.  In this case, Dr. Lehrke

treated Chee's daughter, H.C., in Hawaii, prepared her report in Hawaii, and provided

the report to the guardian ad litem in Hawaii.  Under these circumstances, this Court

lacks personal jurisdiction over Dr. Lehrke.

     Accordingly,

     IT IS ORDERED that defendant Lehrke's motion to dismiss (Doc. 25) is

GRANTED and Lehrke is DISMISSED.

     IT IS FURTHER ORDERED that defendants Harvey's and Ignacio's motions to

dismiss (Doc. 11) are GRANTED and Harvey and Ignacio are DISMISSED.

IT IS FURTHER ORDERED that the State of Hawaii hereby is <u>sua</u> <u>sponte</u>

DISMISSED.

Dated:  September 8, 2008


<u>s/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 8, 2008, by electronic and/or ordinary mail.

<u>s/Josephine Chaffee</u>
Deputy Clerk